UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------

ZHUANGMIN LIN,

                        Plaintiff,

                                                                    **MEMORANDUM & ORDER**
            v.                                                      24-CV-8177 (MKB)

PAM BONDI, *as Attorney General of the United States*, KRISTI NOEM, *as Secretary of the Department of Homeland Security*, JOSEPH B. EDLOW, *as Director of the United States Citizenship and Immigration Services*, CARRIE M. SELBY, *as Acting Associate Director for Service Operations*, *United States Citizenship and Immigration Services*, and DAVID S. VELEZ, *as Acting District Director*, *United States Citizenship and Immigration Services New York District*,

                        Defendants.

------------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Zhuangmin Lin commenced the above-captioned action on November 25, 2024,

against Defendants Pam Bondi, Attorney General of the United States, Kristi Noem, Secretary of

the Department of Homeland Security, Joseph B. Edlow, Director of the United States Citizenship

and Immigration Services ("USCIS"), Carrie M. Selby, Acting Associate Director for Service

Operations, USCIS, David S. Velez, Acting District Director of the New York District, USCIS,

(Complaint ("Compl."), Docket Entry No. 1), and filed an Amended Complaint on May 12,

2025,[1]  (Amended Complaint ("Am. Compl."), Docket Entry No. 19.)  In the Amended

---

        [1]  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the caption has been updated to reflect successor officeholders.  U.S. Attorney General Bondi replaces named defendant Merrick Garland, U.S. Department of Homeland Security Secretary Noem replaces named defendant Alejandro Mayorkas, USCIS Director Edlow replaces named defendant Ur M.

Complaint, Plaintiff asserts claims under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (the "APA"), the Mandamus Act, 28 U.S.C. § 1361 (the "Mandamus Act"), the Due Process Clause of the Fifth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶¶ 44–54.)  Plaintiff seeks declaratory and injunctive relief in connection with Defendants' denial of his Form I-485, Application to Register Permanent Residence or Adjust Status ("I-485 Application"), as well as attorneys' fees pursuant to the Equal Access to Justice Act.  (*Id.* at 13.)

Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure; Plaintiff filed an opposition to Defendants' motion to dismiss, or in the alternative for summary judgement and cross-moved for sanctions against Defendants.[2]  For the reasons discussed below, the Court grants Defendants' motion to dismiss and denies Plaintiff's motion for sanctions.

## I.    Background

### a.    Plaintiff's entry into the United States and his Form I-589 Asylum Application

Plaintiff is a Chinese national who arrived in the United States in 2000 seeking asylum from religious persecution.  (*Id.* ¶ 11; Record of Sworn Statement, annexed in Am. Compl. as

---

Jaddou, and USCIS New York District Director Velez replaces named defendant Andrea Quarantillo.

[2]  (Defs.' Mot. to Dismiss or, in the Alt., for Summ. J. ("Defs.' Mot."), Docket Entry No. 31; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), appended to Defs.' Mot., Docket Entry No. 31-1; Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 27; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 32; Pl.'s Cross-Mot. for Sanctions ("Pl.'s Cross-Mot.") and Mem. for Sanctions ("Pl.'s Mem."), Docket Entry No. 28; Defs.' Opp'n to Pl.'s Cross-Mot., ("Defs.' Opp'n"), Docket Enry No. 33.)

Ex. K; Certified Administrative Record ("CAR") 02839–2844).[3]  When an immigration inspector at the airport interviewed Plaintiff, Plaintiff admitted that he had presented immigration authorities a United States passport, in the name of Thung Thai Nguyen, that he had received from a smuggler.  (Record of Sworn Statement; CAR 02840, 02846–50.)  Plaintiff was paroled into the United States.  (Form I-94 Departure Record, annexed in Am. Compl. as Ex. H; Form I-94 Arrival Record CAR 02856.)

On or about October 11, 2000, Plaintiff received a Notice to Appear ("NTA") charging him with removal pursuant to the Immigration and Nationality Act ("INA").  (October 2000 NTA, annexed in the Am. Compl. as Ex. B; CAR 02830; *see* Am. Compl. ¶ 12.)  According to the NTA, Plaintiff was subject to removal under Section 212 (a)(6)(C)(i) of the INA which provides "any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or entry into the United States or other benefit provided under the Act is inadmissible."  (October 2000 NTA; CAR 02830.)  The NTA also charged Plaintiff with removal under Section 212(a)(7)(A)(i)(l) of the INA "as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act."  (*Id.*)

In February of 2001, Plaintiff submitted a Form I-589 Asylum Application ("I-589"), (CAR 2788–96; *see* Am. Compl. ¶ 12), seeking asylum from religious persecution.  (CAR 2791–

---

[3]  The Government filed multiple volumes of the Certified Administrative Record ("CAR").  Citations to CAR refer to exhibits filed under Docket Entry Nos. 22-1–22-4 and Docket Entry Nos. 26-1–26-6.  (*See* CAR Index, Docket Entry No. 26.)

93, 2796; *see* Am. Compl. ¶ 12.)  On March 26, 2002, an immigration judge denied Plaintiff's asylum application because Plaintiff "failed to establish eligibility for asylum," (the "Immigration Judge Decision").  (Immigration Judge Decision 9, annexed in Am. Compl as Ex. I; *see* CAR 2774–2784.)  The immigration judge did not find "[Plaintiff's] testimony [about the alleged religious persecution he faced] to be credible."  (Immigration Judge Decision 7; CAR 2780.)  The immigration judge ordered Plaintiff's removal from the United States (the "Immigration Judge Removal Order").  (Immigration Judge Removal Order, annexed in Am. Compl. as Ex. C; CAR 2274–5.)  On July 10, 2003, the Board of Immigration Appeals ("BIA") affirmed the Immigration Judge Removal Order.  (CAR 2724.)

> **b.  I-130 petition for alien relative and I-485 applications to adjust status to lawful permanent resident**

In 2009, Plaintiff's wife, who is an American citizen, filed a successful Form I-130 Petition for Alien Relative[4] ("I-130"), on Plaintiff's behalf.  (Am. Compl. ¶ 13; CAR, 02686–87.)  In March of 2010, the I-130 was approved.  (Am. Compl. ¶ 12; Approval Notice, annexed in Am. Compl. as Ex. D.)

On September 15, 2009, Plaintiff filed an I-485 Application to Register Permanent Residence or Adjust Status ("I-485"), to adjust his status to lawful permanent resident ("LPR") ("First I-485 Application").  (Am. Compl. ¶ 14; CAR 02617–22.)  In March of 2010, USCIS denied Plaintiff's First I-485 Application due to "false representation" to "gain an immigration benefit, specifically, admission into the United States."  (CAR 02516–19; USCIS Decision, annexed in Am. Compl. as Ex. E; *see* Am. Compl. ¶ 14.)

---

[4]  USCIS Form I-130, Petition for Alien Relative, https://www.uscis.gov/i-130 (last visited Mar. 23, 2026) (defining Form I-130 as the form used "to establish [a] qualifying relationship with an eligible alien relative . . . who wishes to come to or stay in the United States permanently and apply for the Permanent Resident Card.").

On January 16, 2024, Plaintiff submitted another I-485 Application to readjust his status to LPR ("Second I-485 Application").  (Am. Compl. ¶ 15; *see* CAR 0001.)  In support, Plaintiff submitted an affidavit explaining that he did not "commit fraud under the facts and the legal standard for fraud inadmissibility."  (CAR 00107 ¶ 2.)  In the affidavit, Plaintiff stated that he arrived in the United States with a fake United States passport, (*id.* at 00107 ¶ 4), but he "never used" it "to enter the country, only to board the plane that took [him] from Cuba to the [United States]," (*id.* at 00108 ¶ 6; *see* Br. in re Notice of Intent to Deny, annexed in Am. Compl. as Ex. G.)  On November 5, 2024, USCIS denied Plaintiff's Second I-485 Application, ("November 2024 USCIS I-485 Denial Decision"), finding Plaintiff inadmissible because of his false claim to United States citizenship.  (Am. Compl. ¶ 18; Notice of Decision, annexed in Am. Compl. as Ex. A; CAR 02077–84.)

### c.    Current action

Plaintiff commenced this action on November 25, 2024.  (*See generally* Compl.)  On January 16, 2025, USCIS moved to reopen Plaintiff's Second I-485 Application, issued a Notice of Intent to Deny, and offered Plaintiff a month to respond.  (Am. Compl. ¶ 20–21; CAR 02073–76, 02065–72.)  On February 13, 2025, Plaintiff submitted his response.  (Am. Compl. ¶ 22; Response to Notice of Intent to Deny, annexed to Am. Compl. as Ex. O; CAR 00005–06.)

On March 18, 2025, USCIS issued a denial explaining that their "records establish that . . . [Plaintiff] falsely claimed that [he was] a [United States] citizen," (the "March 2025 USCIS I-485 Denial Decision 3").  (March 2025 USCIS I-485 Denial Decision 3, annexed to Am. Compl. as Ex. P; *see* CAR 00001–04; *see also* Am. Compl. ¶ 23.)  USCIS found Plaintiff ineligible for adjustment of status because Plaintiff failed to meet his burden, under the INA, of demonstrating that he warranted a "favorable exercise of discretion" since "the adverse factors outweighed

5

[Plaintiff's] positive equities."[5]  (March 2025 USCIS I-485 Denial Decision 4, 5; CAR 00003a, 3b.)

## II.  Discussion

### a.  Standards of review

#### i.  Rule 12(b)(1)

A district court may dismiss an action for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it."  *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 37 (2d Cir. 2025) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, N.Y.*, 98 F.4th 386, 391 (2d Cir. 2024) (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021)); *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms.,S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015)), *cert. denied*, 144 S. Ct. 1095 (2024)); *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021) (quoting *Makarova*, 201 F.3d at 113).  Courts must "accept the complaint's material allegations as true, and [ ] draw all reasonable inferences in the plaintiffs' favor," *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113 (2d Cir. 2024) (quoting *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017)), but

---

[5] The positive factors considered by USCIS included Plaintiff's approved I-130 Petition for Alien Relative Application, Plaintiff's American children and spouse, Plaintiff's parents with lawful permanent residence status, and Plaintiff's financial, medical, and emotional support to his relatives. (March 2025 USCIS I-485 Denial Decision 2; CAR 00002.)  The negative factors considered by USCIS included the Immigration Judge Decision, Plaintiff's fraudulent use of a United States passport, Plaintiff's "presence in the United States contrary to law," and Plaintiff's lack of remorse for his violation of the law. (March 2025 USCIS I-485 Denial Decision 2–3; CAR 00002.)

"[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings," *Talarico Bros. Bldg. Corp. v. Union Carbide Corp.*, 73 F.4th 126, 136 (2d Cir. 2023) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)). *See Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) ("It is only where 'jurisdictional facts are placed in dispute' that the court has the 'obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" (first quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); and then citing *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999))); *Iacovo v. Magguilli*, No. 24-CV-4372, 2025 WL 1135471, at *3 (E.D.N.Y. Apr. 17, 2025) ("In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." (quoting *Tandon*, 752 F.3d at 243)). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon*, 752 F.3d at 243 (quoting *Makarova*, 201 F.3d at 113); *AMTAX Holdings*, 136 F.4th at 37 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (quoting *Makarova*, 201 F.3d at 113)).[6]

---

[6] Plaintiff requests that the Court convert Defendant's motion to dismiss to a motion for summary judgment because Defendants have presented evidence outside the pleadings. (*See* Pl.'s Opp'n 10–12.) The Court declines to do so. In deciding a motion for lack of subject matter jurisdiction, a district court may consider evidence outside of the pleadings. *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))), *aff'd*, 561 U.S. 247 (2010). The Court therefore considers evidence outside of the pleadings in deciding the motion for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Cangemi v. United States*, 13 F.4th 115, 129 (2d Cir. 2021) ("'In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.'" (quoting *Makarova*, 201 F.3d at 113)); *Gao v. Wolf*, No. 19-CV-2447, 2020 WL 6727775, at *1, 5 (E.D.N.Y. Nov.

7

###### ii.    Motion for sanctions

Rule 11 provides that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b); *see Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc*., 28 F.3d 259, 264 (2d Cir. 1994) ("Under Fed. R. Civ. P. 11, sanctions may be imposed on a person who signs a pleading, motion, or other paper for an improper purpose such as to delay or needlessly increase the cost of litigation, or [a person who] does so without a belief, formed after reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law"); *Bergon v. ASCAP!*, No. 24-CV-4660, 2024 WL 4955283, at *9 (E.D.N.Y. Dec. 2, 2024) (quoting *Caisse*, 28 F.3d 259 at 264) (same).  A court may impose sanctions where "there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009); *see also Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 56 (2d Cir. 2018) (quoting *Wolters Kluwer Fin. Servs.*, 564 F.3d at 114); *Orr v. McGinty*, No. 17-CV-1280, 2022 WL 2440064, at *1 (N.D.N.Y. July 5, 2022) (quoting *Wolters Kluwer Fin. Servs.*, 564 F.3d at 114).

Pursuant to Rule 11, motions for sanctions must be made "separately from any other motion." Fed. R. Civ. P. 11(c)(2); *Kyros L. P.C. v. World Wrestling Ent., Inc*., 78 F.4th 532, 543

---

16, 2020) (dismissing, for lack of jurisdiction, a plaintiff's challenge of USCIS's denial of his I-485 application and refusing to reach defendants' motion for summary judgment because of the dismissal).

8

(2d Cir. 2023) ("A party must move for sanctions in a filing that is 'separate[ ] from any other motion' and that 'describe[s] the specific conduct that allegedly violates Rule 11(b).'") (alterations in original) (quoting Fed. R. Civ. P. 11(c)(2))); *Rafter v. Fleet Boston Fin. Corp.*, 523 F. App'x 79, 81–82 (2d Cir. 2013) ("Rule 11[] require[s] that the motion be 'made separately from any other motion.'" (quoting Fed. R. Civ. P. 11(c)(2))). "Such a motion may not be presented to the court until the expiration of a twenty-one-day 'safe harbor' period, during which the alleged violator has the chance to withdraw or correct the challenged filing." *Kyros L. P.C.*, 78 F.4th at 543 (quoting same). "The safe-harbor provision is a strict procedural requirement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012); *see Behrens v. JPMorgan Chase Bank, N.A.*, No. 16-CV-5508, 2019 WL 1437019, at *14 (S.D.N.Y. Mar. 31, 2019) ("A motion that fails to comply with the safe harbor provision of Rule 11 must be denied." (citing *Fierro v. Gallucci*, 423 F. App'x 17, 18–19 (2d Cir. 2011))), *aff'd*, No. 21-2603, 2024 WL 1090856 (2d Cir. Mar. 13, 2024) (summary order).

### b.    The Court lacks subject matter jurisdiction

Defendants argue that Plaintiff's "APA suit is barred by two statutes that independently each preclude judicial review by this [C]ourt: 8 U.S.C. § 1252(a)(5) and 8 U.S.C. § 1252(a)(2)(B)(i)." (Defs.' Mem. 18.)  First, Defendants argue that Plaintiff's request that the Court review the March 2025 USCIS I-485 Denial Decision is an indirect challenge to a removal order and Section 1252(a)(5) bars judicial review of such a challenge.  (*Id.* at 18, 20.)  Second, Defendants argue that Section 1252(a)(2)(B)(i) jurisdictionally bars this suit because Congress has precluded judicial review of adjustments of statutory benefits.  (*Id.* at 21–24.)

Plaintiff argues that Section 1252(a)(5) does not bar the Court's jurisdiction because he does not seek to review a removal order as one is not at issue.  (Pl.'s Opp'n 15–23.)  In addition, Plaintiff argues that Section 1252(a)(2)(B)(i) does not bar the Court's jurisdiction because it does

9

not apply to nondiscretionary cases.  (*Id.* at 23–33.)

        **i.**    **Section 1252(a)(5)**

Defendants argue that Section 1252(a)(5) precludes district court review of "even indirect challenges" to removal orders, and if the Court grants Plaintiff's request to adjust his status to LPR, it would render the removal order invalid.  (Defs.' Mem 19–20.)

Plaintiff argues that although he is subject to a removal order, (Pl.'s Opp'n 9), adjusting his status to that of an LPR would not challenge the removal order because reopening the removal order would only occur after a "multi-step process involving decisionmakers from different branches of our immigration system, exercising their judgment and applying different standards," (*id.* at 19).  In addition, Plaintiff argues that "even though a removal order may be reopened," it would only occur "[(]1) after LPR status is granted, [(]2) after the LPR moves to reopen his case, and [(]3) after the immigration court grants such reopening and rescinds the removal order."  (*Id.*)

Pursuant to the INA, as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(b), 119 Stat. 303, 311 (2005) (the "REAL ID Act"), the courts of appeals have exclusive jurisdiction over review of removal decisions.  8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals in accordance with this [S]ection shall be the sole and exclusive means for judicial review of an order of removal . . . ."); *see Santos-Torres v. Houghton*, No. 22-297, 2022 WL 17543154, at *1 (2d Cir. Dec. 9, 2022) (summary order) ("The 'court of appeals,' not the district court, is the 'sole and exclusive means for judicial review of an order of removal.'" (quoting 8 U.S.C. § 1252(a)(5))); *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 (2d Cir. 2008) ("[T]he appropriate Courts of Appeals were to be the 'sole and exclusive means for judicial review' of final orders of removal." (quoting same)).  The Second Circuit has held that "[S]ection 1252(a)(5) would clearly preclude the district court's entertaining of a direct

challenge to a removal order . . . [and] [S]ection 1252(a)(5)'s jurisdictional bar applies equally to preclude . . . indirect challenge[s]." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011); *Jiang v. Bondi*, No. 24-CV-3138, 2025 WL 1503986, at *2 (E.D.N.Y. May 27, 2025) (quoting *Delgado*, 643 F.3d at 55). "[F]ollowing *Delgado*, courts routinely dismiss cases where the requested relief would lead, or be a prerequisite, to invalidation of a removal order, including where the requested relief is action involving an adjustment-of-status application." *Melgar v. Wolf*, 590 F. Supp. 3d 472, 476–77 (E.D.N.Y. 2022) (quoting *Lin v. U.S. Dep't of Homeland Sec.*, No. 15-CV-5588, 2017 WL 818416, at *4 (E.D.N.Y. Mar. 1, 2017)); *see Calderon v. Mayorkas*, 20-CV-3164, 2021 WL 5707431, at *3 (E.D.N.Y. Nov. 30, 2021) ("Because ordering USCIS to assume jurisdiction . . . is a prerequisite to his ultimate goal of adjusting status, [p]laintiff seeks to effectively nullify the underlying order of deportation and thereby runs afoul of 8 U.S.C. § 1252(a)(5)'s prohibition on this [c]ourt's judicial review of orders of removal"); *Gao v. Wolf*, No. 19-CV-2447, 2020 WL 6727775, at *4 (E.D.N.Y. Nov. 16, 2020) (holding that under Section 1252(a)(5), the court lacked jurisdiction to vacate USCIS's denial of plaintiff's I-485 application and compel the agency to grant plaintiff LPR status because the practical effect would be to void the removal order); *Noor v. Homan*, No. 17-CV- 1558, 2018 WL 1313233, at *4 (E.D.N.Y. Feb. 27, 2018) (finding that the court lacked jurisdiction where plaintiff requested an adjustment of his status because the "practical effect of changing [p]laintiff's status . . . would be to void the removal order"); *Hu v. Holder*, No. 11-CV-4747, 2012 WL 2619185, at *1 (E.D.N.Y. June 25, 2012) ("A challenge to an adjustment of status determination is inextricably linked to an alien's removal order, because if the plaintiff were successful in his application this would render the reinstatement order invalid" (citation and internal quotation marks omitted)); *Bici v. Napolitano*, No. 10-CV-1991, 2012 WL 642781, at *2 (D. Conn. Feb. 28, 2012) ("[T]he court does not have jurisdiction to consider the plaintiff's request for an order directing the

11

defendants to grant his application to reapply for admission into the United States"); *Nieto-Ayala v. Holder*, No. 08-CV-8347, 2011 WL 3918156, at *3 (S.D.N.Y. Aug. 30, 2011) ("The Second Circuit recently held that the REAL ID Act also divests district courts of jurisdiction to review indirect challenges to removal orders."). In *Nieto-Ayala*, for example, the plaintiff had been ordered removed but sought to compel the government to allow him to remain on parole while his application for asylum was adjudicated. *Nieto-Ayala*, 2011 WL 39118156, at *3. The district court held that if it granted the requested relief, the removal order would be unenforceable until adjudication of the asylum application was complete, making the requested relief "inextricably linked" to the removal order and therefore subject to the INA's jurisdictional bar. *Id*.

A court's analysis of whether a claim is an indirect challenge "turn[s] on the substance of the relief that a plaintiff is seeking." *Delgado*, 643 F.3d at 55; *see Fulton v. Mayorkas*, No. 25-CV-63, 2025 WL 296051, at *3 (W.D.N.Y. Jan. 24, 2025) (quoting *Delgado*, 643 F.3d at 55) (same); *Gao*, 2020 WL 6727775, at *4 (quoting same); *Barros Anguisaca v. Decker*, 393 F. Supp. 3d 344, 349 (S.D.N.Y. 2019) (quoting same). Section 1252(a)(5) "removes jurisdiction from the district courts . . . if the relief requested [] would invalidate the [removal] order," because "such a challenge is in effect an attempt to obtain judicial review of the removal order indirectly." *Freire v. U.S. Dep't of Homeland Sec.*, 711 F. App'x 58, 59 (2d Cir. 2018); *Lin*, 2017 WL 818416, at *4 ("[C]ourts routinely dismiss cases where the requested relief would lead, or be a prerequisite, to invalidation of a removal order, including where the requested relief is action involving an adjustment-of-status application.").

The Court lacks jurisdiction under Section 1252(a)(5) to adjudicate Plaintiff's requested relief because Plaintiff is indirectly challenging his removal order. (*See* Immigration Judge Removal Order.) Plaintiff concedes that he is subject to a removal order, (Am. Compl. ¶ 12;

12

Pl.'s Opp'n 9), and he "seeks to compel Defendants to render a decision on [his] I-485 Application," (Am. Compl. ¶ 32), in order to adjust his status and grant him LPR status.[7] (*See* Pl.'s Opp'n 24–26.)  The practical effect of changing Plaintiff's status would be to void the removal order because USCIS would need to reconsider its decision denying the Second I-485 application.  (*See* March 2025 USCIS I-485 Denial Decision.)  This is an indirect challenge that is precluded under Section 1252(a)(5).  *See Singh v. U.S. Citizenship & Immigr. Servs.*, 878 F.3d 441, 446 (2d Cir. 2017), *as amended* (Jan. 9, 2018) (holding that Section 1252(a)(5) stripped the district court of jurisdiction "to require the USCIS to consider the merits of [plaintiff's] adjustment-of-status application" because that was "the first step in adjusting his status to that of a [LPR]"); *Jiang*, 2025 WL 1503986, at *2 (holding that Section 1252(a)(5) deprived the court of jurisdiction where plaintiff "indirectly challenge[d] the order of removal because it would have the [c]ourt require USCIS to revisit and, presumably, grant [p]laintiff a status adjustment"); *Gao*, 2020 WL 6727775, at *4 (holding that the court lacked jurisdiction where the plaintiff sought an "order vacating the denial of his I-485 application and compelling USCIS to grant his adjustment to lawful-permanent-resident status"); *Noor*, 2018 WL 1313233, at *4 (holding that the court "lack[ed] jurisdiction" because the plaintiff's "request [for an adjustment of status], in effect, challenge[d] a removal order"); *Singh v. U.S. Citizenship & Immigr. Servs.*, 15-CV-1411,

---

[7]  Plaintiff's argument that he is not challenging the Immigration Judge Removal Order because of the "multi-step" process is without merit.  (*See* Pl.'s Opp'n 19.)  In *Jiang v. Bondi,* Plaintiff's counsel raised similar arguments in a case with substantially similar facts.  *See* No. 24-CV-3138, 2025 WL 1503986, at *2–4 (E.D.N.Y. May 27, 2025).  The plaintiff argued in *Jiang* that his request to adjust his LPR status "ha[d] nothing to do with his outstanding order of removal, and concern[ed] only adjustment of status," because the plaintiff "would still need to take further action such as 'mov[ing] to reopen his removal order.'"  *Id.* at *2 (alteration in original).  The court in *Jiang* found that the plaintiff's request was an indirect attack of the order under Section 1252(a)(5) and "[r]equiring USCIS to reconsider the petition would be a 'first step' toward nullifying the removal order."  (*Id.*)

13

2016 WL 1267796, at *5 (S.D.N.Y. Mar. 30, 2016), *aff'd*, 878 F.3d 441 (2d Cir. 2017), *as amended* (Jan. 9, 2018) (dismissing a case for lack of jurisdiction where the plaintiff requested a remand to USCIS to adjudicate his adjustment-of-status application because "the 'substance of the relief' [the plaintiff] seeks necessarily impugns the validity of the underlying order of removal and is thus 'inextricably linked' to it within the meaning of *Delgado*.").

Accordingly, the Court lacks jurisdiction under Section 1252(a)(5).

### ii.    Section 1252(a)(2)(B)(i)

Defendants argue that Plaintiff's request for a "[Section] 1255(a)-based adjustment application"[8] to adjust his LPR status is solely within USCIS's discretion and Congress has barred jurisdictional review of USCIS decisions under Section 1252(a)(2)(B)(i).  (Defs.' Mem. 21.)

Plaintiff argues that Section 1252(a)(2)(B)(i) does not bar the Court's jurisdiction because USCIS denied his I-485 Application on a statutory ground that he committed fraud, and Section 1252(a)(2)(B)(i) applies to discretionary denials of relief.  (Pl.'s Opp'n 26.)

Section 1252(a)(2)(B)(i) "prohibits review of *any* judgment regarding the granting of relief under [Section] 1255 and the other enumerated provisions."  *Patel v. Garland*, 596 U.S. 328, 338 (2022); *see Agard v. Garland*, No. 23-6347, 2024 WL 1433337, at *1 (2d Cir. Apr. 3, 2024) (summary order) ("Under [Section] 1252(a)(2)(B)(i), no court has jurisdiction to review . . . any judgment regarding the granting of relief under [S]ection 1255" (internal quotation marks

---

[8]  Section 1255 "allows the executive to grant an adjustment of status, *inter alia*, to 'an alien who was inspected and admitted or paroled into the United States.'"  *Cruz-Miguel v. Holder*, 650 F.3d 189, 192 (2d Cir. 2011) (quoting 8 U.S.C. § 1255(a)).  "Determinations regarding [I-485] applications are made pursuant to 8 U.S.C. § 1255(a) . . . ."  *Ruiz v. Mukasey*, 552 F.3d 269, 276 n.4 (2d Cir. 2009); *see also Sharkey v. Quarantillo*, 541 F.3d 75, 85 (2d Cir. 2008) ("Section 1255 governs the process of granting LPR status.").

14

omitted)).  "The INA specifically strips courts of the ability to review 'any judgment regarding the granting of relief under [S]ection . . . 1255.'"  *Palacios v. Bondi*, No. 24-2140, 2025 WL 1983482, at *4 (2d Cir. July 17, 2025) (summary order) (alteration in original) (quoting 8 U.S.C. § 1252(a)(2)(B)(i)).  "[Section] 1252(a)(2)(B)(i) precludes judicial review of [a] challenge to USCIS's denial of [an] application for adjustment of status under [Section] 1255."  *Xia v. Bondi*, 137 F.4th 85, 94 (2d Cir. 2025).  A "USCIS[] denial is unreviewable regardless of whether it rested on discretionary factors, a determination that [plaintiff] is statutorily ineligible for adjustment of status, or both," *id*. at 93, and "regardless of whether the judgment, decision, or action is made in removal proceedings," *id.* at 90 (quoting Section 1252(a)(2)(B)(i)); *see also Kamel v. U.S. Citizenship & Immigr. Servs.*, No. 23-CV-10490, 2025 WL 2198926, at *2 (S.D.N.Y. Aug. 1, 2025) (quoting *Xia* 137 F.4th at 93).  "[A] denial of an application for adjustment of status under [Section] 1255 is a 'judgment' for purposes of [Section] 1252(a)(2)(B)(i) regardless of whether it is issued by an immigration court or USCIS."  *Xia*, 137 F.4th at 93; *Palacios*, 2025 WL 1983482, at *4 (quoting *Xia*, 137 F.4th at 93); *see also Abuzeid v. Mayorkas*, 62 F.4th 578, 584 (D.C. Cir. 2023) ("The 'regardless' clause 'makes clear that the jurisdictional limitations imposed by [Section] 1252(a)(2)(B) also apply to review of agency decisions made outside of the removal context.'") (quoting *Lee v. U.S. Citizenship & Immigr. Servs.*, 592 F.3d 612, 619 (4th Cir. 2010))).

Section 1252(a)(2)(B)(i) provides an exception to its jurisdictional bar with regard to "judicial review of constitutional claims or questions of law only by an appropriate court of appeals, and only upon a petition for review."  *Xia*, 137 F.4th at 93 (internal quotation omitted); *see Toalombo Yanez v. Bondi*, 140 F.4th 35, 47 (2d Cir. 2025) (noting that under Section 1252(a)(2)(B)(i), an appellate court has jurisdiction to review "constitutional claims or questions of law raised upon a petition for review"); *Quammie v. Garland*, No. 23-6698, 2024 WL

15

2828412, at *1 (2d Cir. June 4, 2024) (noting that the Second Circuit's "jurisdiction to review the denial of adjustment of status under [Section] 1255(a) is limited to constitutional claims and questions of law"); *Cruz-Miguel v. Holder*, 650 F.3d 189, 193 (2d Cir. 2011) (noting that the Second Circuit "retain[s] jurisdiction, however, to review 'constitutional claims or questions of law raised upon a petition for review'") (quoting 8 U.S.C. § 1252(a)(2)(D)); *Ambati v. U.S. Citizenship & Immigr. Servs.*, No. 24-CV-5712, 2025 WL 1906093, at *2 (S.D.N.Y. July 10, 2025) ("[J]udicial review of a decision to deny an application for adjustment of status is limited to constitutional claims and questions of law, which must be brought through a petition for review of a removal order in the Court of Appeals.").

Plaintiff's argument that the statute only applies to discretionary denials of relief and that *Xia* leaves open judicial review in nondiscretionary cases, (*see* Pl.'s Opp'n 23, 26), is contradicted by Second Circuit case law.  The Second Circuit has held that under Section 1252(a)(2)(B)(i), "USCIS's denial is unreviewable regardless of whether it rested on discretionary factors, a determination that [plaintiff] is statutorily ineligible for adjustment of status, or both."  *Xia*, 137 F.4th at 94; *Srimarayat v. Bondi*, No. 24-CV-6737, 2026 WL 575506, at *4 (E.D.N.Y. Mar. 2, 2026) (holding that "even if USCIS's decision [to deny the petitioner's I-485 application] was procedural, as the petitioner claims, the [c]ourt does not have subject matter jurisdiction to review it.").

Accordingly, the Court lacks jurisdiction under Section 1252(a)(2)(B)(i) to adjudicate Plaintiff's challenge to USCIS's denial of his I-485 Application seeking to adjust his status to LPR.  *See Palacios*, 2025 WL 1983482, at *4 (affirming the district court's dismissal under Section 1252(a)(2)(B)(i) of a plaintiff's challenge to USCIS's denial of Section 1255(a)-based adjustment); *Jiang*, 2025 WL 1503986, at *4 (holding that the district court lacked subject matter jurisdiction under Section 1252(a)(2)(B)(i) where the plaintiff sought to adjust his I-485 status

which had been denied based on fraud); *Yang v. Nolan*, No. 24-CV-3668, 2025 WL 240966, at *8 (S.D.N.Y. Jan. 17, 2025) (holding that the court lacked jurisdiction to review the plaintiff's request that the court review USCIS's adjudication of the plaintiff's adjustment of status application and further holding that "[a]ny legal error in such determination may be raised through a petition to the Court of Appeals on review of a final order of removal.").[9]

---

[9] In his Amended Complaint, Plaintiff references the Mandamus Act, 28 U.S.C. § 1361, the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et seq.*, the Due Process Clause, and the Equal Protection Clause, (*see generally* Am. Compl.), but he cannot obtain relief under any of these provisions. First, The Mandamus Act does not confer subject matter jurisdiction on district courts to review a USCIS denial because the INA bars jurisdiction. *See Delgado v. Quarantillo*, 643 F.3d 52, 56 (2d Cir.2011) (per curium) (holding that the court may not "allow [the plaintiff] to evade the restrictions of section 1252(a)(5) by styling her challenge as a mandamus action in order to claim jurisdiction"); *see Ozturk v. Hyde*, 136 F.4th 382, 403 (2d Cir. 2025) (noting that there is a "general rule that appellate courts should avoid determining jurisdictional issues on a petition for mandamus"); *Ansah v. Napolitano*, No. 12-CV-5205, 2013 WL 247984, at *3 (S.D.N.Y. Jan. 23, 2013) (holding that the Mandamus Act does not "confer[] jurisdiction over a case before a district court where such review is prohibited by the INA as amended by the REAL ID Act"). Second, Plaintiff cannot rely on the DJA as it is not a source of substantive rights. *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 245 (2d Cir. 2012) (collecting cases) ("[W]here [a statute] does not provide that legal predicate, the DJA cannot expand the statute's authority by doing so."); *Ferdous v. Johnson*, No. 15-CV-0122, 2015 WL 9581815, at *6 (E.D.N.Y. Dec. 30, 2015) ("DJA is remedial, not jurisdictional." (internal quotation and citation omitted)). Finally, the Court cannot review Plaintiff's constitutional claims because the INA requires that they be raised in the court of appeals. *See Palacios v. Bondi*, No. 24-2140, 2025 WL 1983482, at *4 (2d Cir. July 17, 2025) (summary order) ("'[C]onstitutional claims or questions of law' arising out of USCIS's denial of discretionary relief 'must be raised upon a petition for review filed with an appropriate court of appeals'" (quoting *Shabaj v. Holder*, 718 F.3d 48, 52 (2d Cir. 2013))); *Singh v. Gonzales*, 468 F.3d 135, 137–38 (2d Cir. 2006) ("Although Congress barred judicial review of a decision to grant discretionary relief such as . . . adjustment of status, it partially restored jurisdiction by not "precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals."" (quoting 8 U.S.C. § 1252(a)(2)(d))); *Ambati v. . U.S. Citizenship & Immigr. Servs.*, No. 24-CV-5712, 2025 WL 1906093, at *2 (S.D.N.Y. July 10, 2025) ("[J]udicial review of a decision to deny an application for adjustment of status is limited to constitutional claims and questions of law, which must be brought through a petition for review of a removal order in the Court of Appeals.").

### c.  Motion for sanctions

Plaintiff argues that Defendants should be sanctioned under Rule 11(c), because they "have engaged [in] a pattern of bad faith and abuse of discretion conduct," (Pl.'s Mem. 4), as well as "gamesmanship," (*id.* at 8), intended "to cause undue delay of this instant lawsuit and preclude judicial review," (*id.* at 4.)  In support, Plaintiff argues that USCIS reopened the Second I-485 Application to adjust his status to LPR "in name only," (*id.* at 13), and the Court should impose sanctions because Defendants have "engaged in behavior and have presented filings that are motivated by 'improper purposes,'" (*id.* at 16.)

Defendants argue, first, that Plaintiff failed to comply with Rule 11(c)(2) because "Plaintiff did not serve his cross-motion on Defendants before filing it" and did not provide the required twenty-one-day safe-harbor period.  (Defs.' Opp'n 18–19.)  Second, Defendants argue that Plaintiff has failed to show "unnecessary delay."  (*Id.* at 16.)  In support, Defendants contend that USCIS moved efficiently "short-circuiting any need for briefing," which is the "exact *opposite* of the supposed 'unnecessary delay.'"  (*Id.* at 16.)  Third, Defendants argue that Plaintiff's sanctions motion concerns a "stale issue," because USCIS had already reopened Plaintiff's application and issued a final agency action approximately six months earlier.  (*Id.*)

Plaintiff has not alleged or argued that he has complied with the relevant procedural requirements of Rule 11 by serving his cross-motion on Defendants before filing it and providing the required twenty-one-day safe-harbor period.  According to the docket, Plaintiff filed the motion on August 21, 2025, (Pl.'s Cross-Mot.), but has not submitted any facts alleging that he served the motion on Defendants' twenty-one days before filing it.  (*See* Defs.' Opp'n 18.)  Moreover, Defendants argue in their opposition that Plaintiff did not serve them prior to filing the motion.  (*Id.* at 18–19.)  The Court therefore denies Plaintiff's motion for sanctions pursuant to Rule 11(c)(2) for failure to comply with the procedural requirements.  *See Gallucci*, 423 F.

18

App'x at 18–19 (affirming denial of Rule 11 sanctions where the movant failed to comply with the Rule 11(c)(2) twenty-one-day safe-harbor requirement); *see also Bryant v. Britt*, 420 F.3d 161, 163 n.2 (2d Cir. 2005) (finding that, because movant "failed to comply" with Rule 11's procedural requirements, there was "no error in the district court's decision" to deny sanctions); *Coker v. Goldberg & Assocs.*, *P.C.*, 21-CV-1803, 2024 WL 263121, at *3 (S.D.N.Y. Jan. 24, 2024) ("A motion that fails to comply with the safe harbor provision of Rule 11 must be denied." (quoting *Castro v. Mitchell*, 727 F. Supp. 2d 302, 306 (S.D.N.Y. 2010))); *Behrens*, 2019 WL 1437019, at *14  ("Because '[c]ompliance with Rule 11's safe harbor provision is mandatory . . . failure to do so will result in a denial of the sanctions motion.'" (quoting *Libaire v. Kaplan*, 06-CV-1500, 2008 WL 794973, at *12 (E.D.N.Y. Mar. 24, 2008))).

### III.  Conclusion

For the reasons discussed above, the Court grants Defendants' motion to dismiss and denies Plaintiff's motion for sanctions.

Dated: March 25, 2026
        Brooklyn, New York

SO ORDERED:

/s/ MKB
MARGO K. BRODIE
United States District Judge

19